Selena H. THREADGILL, Individually and as Executrix of the Estate of Walter L. Threadgill;

Gerald G. Threadgill, Nancy L. Threadgill and Barbara E. Threadgill Ross, children of Walter L. Threadgill, deceased

v.

ARMSTRONG WORLD INDUSTRIES, INC., formerly known as Armstrong Cork Company; Atlas Turner, Ltd., formerly known as Atlas Asbestos Company, a division of Bell Asbestos Mines, Ltd.; Bell Asbestos Mines Ltd.; Celotex Corporation, Individually and as Successor–in–Interest to the Philip Carey Manufacturing Company, Philip Carey Corporation, Smith and Kanzer, Briggs Manufacturing Company and Panacon Corporation; Carey Canadian Mines, Ltd.; Eagle–Picher Industries, Inc.; Fibreboard Corporation; GAF Corporation, Individually and as Successor–in–Interest to Rubberoid Corporation; H.K. Porter Company, Inc., Individual-

ly and as Successor–in–Interest to Rubberoid Corporation; Mattison Company, Bell Asbestos Mines, Ltd. (including its wholly-owned subsidiary Atlas Asbestos Company) and Atlas Turner Ltd.;

Selena Threadgill, Appellant.

No. 90–3599.

United States Court of Appeals, Third Circuit.

Argued Feb. 4, 1991.

Decided March 19, 1991.

Robert Jacobs (argued), Jacobs & Crumplar, Wilmington, Del., for appellants.

John C. Phillips, Jr. (argued), Carmella P. Keener, Phillips & Snyder, Wilmington, Del., for appellee Manville Corp. Asbestos Disease Compensation Fund.

* Honorable Louis H. Pollak of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Before MANSMANN and SCIRICA, Circuit Judges, and POLLAK, District Judge.*

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

This appeal requires that we resolve an evidentiary dispute arising in the context of a personal injury action alleging negligence and conspiracy on the part of various manufacturers and distributors of asbestos-containing products. The plaintiffs appeal the district court's denial of their motion for a new trial following a jury verdict in favor of the defendants, contending that the district court erred in excluding certain exhibits, well-known in asbestos litigation, as the "Sumner Simpson documents," on authenticity grounds. The district court declined to review the disputed documents and based its ruling of inadmissibility on a prior decision involving essentially the same documents rendered by another district judge in an unrelated case in the same district. Because we conclude that the district court erred in excluding the documents on the basis of authenticity, we will reverse the order of the district court and remand the case for a new trial.

I.

The procedural history of this litigation shapes the issues before us. Thus, we set forth the procedural facts in detail.

On March 18, 1988, the widow and children of Walter Threadgill filed suit in the United States District Court for the District of Delaware against multiple defendants.[1] The plaintiffs contended that as a result of the defendants' negligent failure to warn of health hazards associated with asbestos, and conspiracy to conceal those hazards, Walter Threadgill was exposed to asbestos, contracted mesothelioma, and died. Prior to trial, all of the defendants except the Manville Corporation Asbestos

1. At the same time that suit was filed in Delaware, the plaintiffs filed an identical action in Mississippi, which has a six-year limitations period. The plaintiffs proceeded to trial against

Disease Compensation Fund ("the Fund"), were dismissed on limitations grounds.[2]

In anticipation of trial, the parties filed witness and exhibit lists. Among the documents listed by the plaintiffs were some of the approximately 6,000 so-called "Sumner Simpson documents." These documents, which have been considered with some frequency in the context of asbestos litigation, consist primarily of correspondence among a former president of Raybestos–Manhattan Sumner Simpson, Johns–Manville's former in-house counsel Vandiver Brown, and others. The documents, originally produced by Raybestos–Manhattan in the course of nation-wide asbestos litigation, have been offered by various plaintiffs in other asbestos-related actions in an attempt to show that as early as the 1930's, asbestos manufacturers knew of the health hazards associated with asbestos and knowingly concealed those dangers. While many courts considering these documents have admitted them, others, responding to various defense objections, have not. Neither of the parties in this case made any pre-trial effort, with the exception of the plaintiffs' exhibit list, to direct the district court's attention specifically to the Sumner Simpson documents.

At the start of trial, the plaintiffs' counsel, preparing to make an opening statement and to examine a state-of-the-art witness, delivered a letter to the district court reiterating his intention to refer to the Sumner Simpson documents. He also submitted a binder containing the documents and additional supporting evidence included to meet any hearsay or authenticity challenge. Because they were aware of the fact that some courts had sustained objections to the documents, "to be prudent," the plaintiffs asked that the district court rule on the documents' admissibility.

On May 15, 1990, the parties addressed the Sumner Simpson documents in argument before the district court. The plaintiffs' counsel briefly described the documents themselves and the additional documents being offered for purposes of authentication. He recognized that the Sumner Simpson documents had been ruled inadmissible in a prior asbestos-related action tried in the District of Delaware[3] but argued that authenticating documents not available in the prior action required a re-evaluation of admissibility in this case.

Counsel for the Fund objected to introduction of the Sumner Simpson letters and consideration of the authenticating documents on the ground that the ruling in *Williams* represented "the law of the district" and that the plaintiffs' motion to "overturn [the *Williams*] ruling comes too late." Counsel for the Fund claimed to have interpreted the documents' inclusion on the exhibit list as nothing more than an attempt to "preserve [the plaintiffs'] record as to objections that might be made under [the *Williams*] ruling." Counsel for the Fund also claimed that he had not been provided with all of the documents supporting authentication and objected that certain of the supporting documents had not been included on the plaintiffs' exhibit list. "I would suggest to the Court that I have been highly prejudiced by this last-minute, late-night effort.... If somebody wants to change the law of the district, then they are obliged to bring that before the Court and try to do so before you are starting trial."

The plaintiffs' counsel responded that the Fund had been provided with all of the supporting documents and was on full notice of the plaintiffs' intent to rely on the Sumner Simpson documents by virtue of their having been included, some months

the Fund in Delaware. The Mississippi action is pending as to all defendants.

**2.** The Fund is the entity created by the bankruptcy court during the course of proceedings involving the Johns–Manville Corporation. The Fund assumes the position of the corporation for purposes of asbestos litigation.

**3.** *See Williams v. A.C. & S., Inc.*, C.A. No. 85–550 JJF, bench ruling (D.Del. Jan. 12, 1989). Counsel for the plaintiffs in this case was also counsel for the plaintiffs in *Williams*. *Williams* turned on Pennsylvania rather than Delaware law and involved different defendants; the Fund was not a party.

earlier, on the plaintiffs' exhibit list.[4] The plaintiffs also argued that it was inappropriate to characterize *Williams* as the law of the circuit or the district. "It was one Pennsylvania case that reviewed it all and [*Williams*] followed it. And I don't believe it's the law of this district . . . [D]ifferent Judges make different rulings."

Concluding that the plaintiffs' motion to depart from the ruling in *Williams* was untimely, the district court refused to consider the Sumner Simpson documents or the documents supporting authenticity. In so ruling, the district court adopted the *Williams* decision holding the Sumner Simpson documents inadmissible on authenticity grounds. The substance of the *Williams* decision was not discussed.

Trial continued and, following the presentation of the plaintiffs' case, the court directed a verdict on the conspiracy claim. The question of liability on the negligence count was submitted to the jury which responded as follows to the interrogatory presented:

1. Do you find [the Fund] liable under the instructions I have given in the death of Walter Threadgill?

   Yes _____

   No X_____

The plaintiffs filed a motion for a new trial based in part on the court's exclusion of the Sumner Simpson documents. The motion was denied by opinion on July 27, 1990 and this appeal followed. The district court's exclusion of the Sumner Simpson documents is the only error assigned on appeal.

## II.

■ "Where a contention for a new trial is based on the admissibility of evidence, the trial court has great discretion . . . which will not be disturbed on appeal absent a finding of abuse." *Link v. Mercedes–Benz of North America, Inc.*, 788 F.2d 918, 921 (3d Cir.1986). With this standard in mind, we turn to the plaintiffs' claim that the district court erred in failing to conduct an independent examination of the Sumner Simpson documents and in adopting the ruling in *Williams* that the documents were inadmissable in that their authenticity had not been established.

The district court arrived at its decision to adopt the holding in *Williams* via a procedural route. Because it concluded that the plaintiffs bore the responsibility for focusing the attention of the court upon the admissibility of the Sumner Simpson documents and had failed to do so in a timely manner, the district court declined to consider the plaintiffs' argument that this case was distinguishable from *Williams*, declined to evaluate the merits of the Sumner Simpson dispute, and declined to consider documents[5] bearing on authentication which the plaintiffs argued had not been available to the district court in *Williams*.[6]

4. Plaintiffs' counsel argued that the supporting documents' omission from the exhibit list resulted from a pre-trial limitation on the number of documents which could be listed.

5. The additional documents included a series of Johns–Manville papers which had been produced by Manville in a federal claims court action. These documents referred to the Sumner Simpson papers and could be read to corroborate their authenticity.

The plaintiffs also sought to have the court consider the affidavit of Hugh Jackson who, the plaintiffs argued, was a former Manville executive able to identify the Manville letterhead and to clarify that the Sumner Simpson papers were a collection of correspondence kept by the president of Raybestos–Manhattan. "[H]e can add the dimension which is required under Rule 901(b)(4) that the papers appear to be proper." Finally, the plaintiffs offered a second deposi-

tion of William Simpson which they argued had not been available to the district court in *Williams* and which clarified the chain of custody of the Sumner Simpson documents.

6. The district court stated:

Mr. Jacobs, in this District, when one Judge makes a ruling on a particular point, the other Judges will follow it, unless there is good reason not to do so.

And I am going to follow [the *Williams*] ruling. And I think that it is not necessary every time a similar issue comes up to have to reargue the whole thing all over again.

In view of the fact that [the court in *Williams*] has ruled on these documents, if, in a subsequent case, someone wants to bring the documents in, that has got to be brought to the court's attention by the person who wishes to bring the documents in in sufficient

Our review of this record convinces us that the district court erred in concluding that the plaintiffs bore the burden of raising the admissibility of the Sumner Simpson documents and that their attempt to secure a ruling on this issue was untimely.

▮ First, it is clear that there is no such thing as "the law of the district." Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same district, the prior "resolution of those claims does not bar reconsideration by this Court of similar contentions. The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another." *State Farm Mutual Automobile Insurance Co. v. Bates*, 542 F.Supp. 807, 816 (N.D.Ga. 1982).[7] Where a second judge believes that a different result may obtain, independent analysis is appropriate. *Id.*

▮ We have been directed to no case or rule in support of the proposition advanced by the Fund that it was entitled to proceed under the assumption that the *Williams* decision would be followed automatically. In pretrial submissions, the plaintiffs con-

sistently listed the Sumner Simpson documents as exhibits to be used at trial and reiterated their intent to pursue the conspiracy theory to which the documents were vital. Where the Fund did not raise the *Williams* decision in a motion in limine or otherwise seek to have the documents excluded, we believe that the plaintiffs were justified in expecting that the district court would conduct an independent review of the documents' admissibility should there be any objection to their admission at trial.[8] This is especially true where the plaintiffs contended that they were able to produce corroborating documents which had not been available to the district court in *Williams*.

The Fund has cited no case to support its proposition that a prior district court ruling on a point at issue in different litigation in the same district imposes different, more stringent requirements on the litigants with respect to the timing of motions and burdens of proof or that such a prior ruling relieves a party from raising evidentiary objections which he otherwise would be expected to raise.

Given the state of the law, we are not persuaded by the Fund's argument—appar-

---

time that due consideration can be given to it and with an explanation as to why the situation is not the situation that was ruled on by [the district court in *Williams*].

And in view of the fact that [the district court in *Williams*] has made a ruling, I am not at this late date going to reconsider it. . . .

If you think there is additional information that has bearing on the ruling, that should be brought to the Court's attention well before the trial.

**7.** For similar statements of the law, *see Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1124 (7th Cir.1987) (district judges should not treat decisions of other district judges as controlling unless doctrines of res judicata or collateral estoppel apply); *United States v. Article of Drugs Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir.1987) (single district court decision has little precedential effect and is not binding on other district judges in the same district); *Starbuck v. City and Country of San Francisco*, 556 F.2d 450, 457 n. 13 (9th Cir.1977 (same)); *Farley v. Farley*, 481 F.2d 1009 (3d Cir.1973) (even a three judge decision of the district court is not necessarily binding on any other district court); and *EEOC v. Pan American World Airways*, 576 F.Supp. 1530, 1535 (S.D.N.Y.1984) (district court

decision was not binding even on other district courts in the same district).

**8.** Rule 5.4 of the Federal Court Local Rules for the District of Delaware requires that the plaintiff file a proposed pre-trial order signed by an attorney for each party. This order is to contain:

   \*    \*    \*    \*    \*    \*

(5) a statement of the issues of law which any party contends remain to be litigated and a citation of authorities relied upon by each party.

(6) A list of premarked exhibits . . . which each party intends to offer at the trial with a specification of those which will be admitted in evidence without objection, those that will be objected to and the Federal Rule of Evidence in support of said objection and the Federal Rule of Evidence relied upon by the proponent of the exhibit.

At oral argument, counsel for the plaintiffs explained that this normal pretrial procedure, which might have eliminated the difficulties which arose in this case, was not followed here or in other asbestos cases then pending in the District of Delaware. The scheduling order and witness and exhibit lists were the operative documents; no pretrial order was required.

ently adopted by the district court—that it was not obligated to file a protective order or motion in limine with respect to items on the plaintiffs' exhibit list because it was entitled to rely on the ruling in *Williams* as "the law of the district." It was by no means safe to assume that the Sumner Simpson issue had been settled for all time in the District of Delaware by an unpublished bench ruling in an unrelated case and that no further examination of the documents was appropriate or necessary.[9] Especially since the plaintiffs argued that the information available in this case differed materially from that available in *Williams,* we believe that they were entitled to have the district court evaluate the documents rather than decide the issue based upon a discussion of timeliness unsupported by the rules, federal or local, or the caselaw.

While we are convinced that the district court erred in refusing to evaluate the Sumner Simpson documents and the supporting materials, this error, per se, does not mandate reversal. We could affirm the order of the district court nonetheless, were we to conclude that the district court correctly adopted the ruling in *Williams* despite having arrived at this adoption through a problematic analysis. Our examination of *Williams* convinces us, however, that the district court in *Williams* erred in analyzing the admissibility of the Sumner Simpson documents. The district court in this case, therefore, also committed error. It is this error in the adoption of *Williams* which requires that we reverse the order of the district court.

In order to place our discussion in context, it is necessary that we address the substance of the Sumner Simpson documents and the evidentiary issues which they raise.

### III.

#### A.

The history of the Sumner Simpson documents can be traced through a summary of the original deposition testimony of William Simpson, Sumner Simpson's son.

The William Simpson deposition establishes that Sumner Simpson was the president of Raybestos–Manhattan, Inc. from the 1930's until his death in the 1950's. William Simpson, who spent his career at Raybestos–Manhattan and also served as president, testified that he was personally aware of the fact that Sumner Simpson had stored personal files in the Raybestos–Manhattan vault. The vault, in which William Simpson had seen documents filed, was secured by a combination lock, with access prior to 1969 limited to Sumner Simpson, William Simpson, two secretaries and the security guards. William Simpson never received reports of theft or tampering.

In 1969, the box containing the papers at issue was moved to William Simpson's Bridgeport, Connecticut office where it remained secure in a closet until 1974. In 1974, the box was delivered to Raybestos–Manhattan's Director of Environmental Affairs, John Marsh. At some point between 1974 and 1977, Marsh told Simpson that the papers were relevant to asbestos disease and, in 1977, the papers were transferred to lawyers for Raybestos–Manhattan pursuant to a document production request in a then pending lawsuit.

While the original documents remain in the possession of Raymark (the successor to Raybestos–Manhattan), copies were produced during discovery in this matter. The plaintiffs contend that the documents show that Johns–Manville had knowledge of health-related asbestos hazards and conspired with Raybestos–Manhattan to suppress information regarding these risks. Brief excerpts from these documents illustrate why the plaintiffs desire to have them admitted.

In a letter dated September 25, 1935, written on "Asbestos" magazine letterhead and signed "A.S. Rossiter," Rossiter wrote

---

9. According presumptive binding effect to rulings of this type carries the potential for creation of an inescapable procedural trap for counsel who could not reasonably be expected to know even that such a ruling has been made.

to Sumner Simpson at Raybestos–Manhattan asking whether Simpson would object to "Asbestos" printing an article on the company's dust control procedures. The letter included the following:

> You may recall that we have written you on several occasions concerning the publishing of information, or discussion of, asbestosis and the work which has been and is being done, to eliminate or at least reduce it.

> Always you have requested that for certain obvious reasons we publish nothing, and naturally your wishes have been respected.

A carbon copy of an October 1, 1935 letter from Bridgeport, Connecticut (Raybestos headquarters), to Vandiver Brown, general counsel for Johns–Manville, indicates that the Rossiter letter was enclosed. The copy, while unsigned, contains the word "President" beneath the signature line. The initials "SS–G" appear in the bottom left-hand corner of the copy. The letter, presumed to have been written or dictated by Sumner Simpson, and typed by Miss Garvey reads in part:

> As I see it personally, we would be just as well off to say nothing about it until our survey is complete. I think the less said about asbestosis, the better off we are, but at the same time, we cannot lose track of the fact that there have been a number of articles on asbestos dust control and asbestosis in the British trade magazines. The magazine "Asbestos" is in the business to publish articles affecting the trade and they have been very decent about not re-printing the English articles.

Vandiver Brown apparently received the Sumner Simpson letter as, on October 3, 1935, Brown wrote a letter to Simpson on Johns–Manville letterhead. This letter acknowledged receipt of the September 25th Rossiter letter and read as follows:

> I quite agree with you that our interests are best served by having asbestosis receive the minimum of publicity. Even if we should eventually decide to raise no objection to the publication of an article on asbestosis in the magazine in question, I think we should warn the editors to use American data on the subject, rather than English. Dr. Lanza has frequently remarked, to me personally and in some of his papers, that the clinical picture presented in North American localities where there is an asbestos dust hazard is considerably milder than that reported in England and South Africa.

The plaintiffs contend that these documents indicate that certain asbestos manufacturers knew of the health hazards posed by asbestos and acted in concert to conceal those hazards.

**B.**

Where defendants in other cases have objected to introduction of the Sumner Simpson documents, they have done so most often on the grounds that the documents are not authentic, that they contain hearsay, that they are irrelevant, or that they are prejudicial.

Three cases in which the Sumner Simpson documents were not admitted were decided by district courts in this circuit. The rulings in *Neal v. Carey Canadian Mines*, C.A. No. 78–242 bench ruling (E.D.Pa. March 25, 1981); *Cheney v. Celotex*, C.A. No. 84–941, bench ruling (E.D.Pa. Sept. 24, 1986); and *Williams*, underlie the present controversy. In excluding the Sumner Simpson documents in the case now under consideration, the district court relied on the ruling in *Williams*. The ruling in *Williams* was derived from the rulings in *Cheney* and *Neal*. Thus, the district court's decision to exclude the documents in the case now before us has its origins in *Neal*.

In *Neal*, the plaintiffs offered certain of the Sumner Simpson documents against Johns–Manville on the issue of conspiracy.[10] Johns–Manville raised a hearsay objection to the introduction of these documents. The district court, responding to the plaintiffs' argument that the documents qualified as authentic under Fed.R.

---

10. The documents may also have been offered to show knowledge on the part of Johns–Man- ville but this is not clear from the transcript of the bench ruling.

of Evid. 901(b)(8) and, therefore, were not hearsay under the hearsay exception embodied in Fed.R.Evid. 803(16), refused to view the Sumner Simpson papers as ancient documents stating:

> I do not believe that they satisfy the requirements of ancient documents in that they arrive in court in such a condition by contents or by the description of the circumstances in which they were developed that can satisfy the Court that they are free of suspicion in terms of the manner in which they were maintained and the like that is, suspicious from the viewpoint of reliability as to their trustworthiness, their completeness, the [chain] of custody, so to speak, being in keeping with what the Ancient Documents Rule I think expects, and that is the records be in this context I think maintained and found in a setting that would lend a level of trustworthiness that the Court would consider as a basis of admissibility.

The district court in *Neal* also discussed why, in its view, the documents did not fall within the business records exception to the hearsay rule and noted, without discussion, potential additional problems with relevance and content. It is clear that in making its authoritative ruling, the district court considered at least the William Simpson deposition. What else it might have considered is unclear.

*Cheney* is relevant because it also was considered in *Williams*. In *Cheney*, a defendant—it is not clear from the transcript of the bench ruling *which* defendant—objected via a motion in limine to introduction of three of the Sumner Simpson documents on the issues of negligence and punitive damages. The defendants' objections were based on hearsay, relevance and prejudice. At argument on the motion, only the issue of relevance was pressed. Counsel for the defendants noted that while the documents in question discussed the exposure of plant

workers to raw asbestos, the plaintiff was a sheet metal worker alleging exposure to finished asbestos-containing textile products. The court expressed concern that in stating that the "less said about asbestosis, the better," the writers may have been saying "the less said about the British experience, the better, until we have had an opportunity to complete our survey of the American experience." The court then stated that it was

> satisfied that the authenticity elements have been satisfied as to these three documents, but under Rule 403, I find that there is a high degree of unreliability as to the completeness of the correspondence, as well as the context in which the documents—in which the correspondence is made. There is an undue risk. There is a risk of undue prejudice to the defendant which outweighs the probative value.... Speculation would be improper.
>
> [If] the sole purpose of the use of these documents was to show that this company had knowledge of the English literature pertaining to asbestos, that would be one thing. But the use sought is much broader than that. And it is that broad use which causes this Court to invoke 403.[11]

In *Williams*, the plaintiff attempted to offer the Sumner Simpson documents against Raymark, the successor to Raybestos–Manhattan, relying on the ancient documents provision or the business records exception to the hearsay rule. The court acknowledged that it had reviewed the rulings in *Neal* and *Cheney* and noted that both courts had concluded that the documents did not qualify under the ancient documents rule:[12] "They are very clear what their findings are." Finally, having been presented with no other authority, the court ruled on the authenticity issue.

> [I] find that the plaintiff cannot meet its burden with regard to authenticity.

---

11. We need not reach the issues of relevance or undue prejudice. The Fund raised neither of these objections to admission of the Sumner Simpson documents before the district court. We, therefore, find that objections on either of these grounds are waived.

12. This statement was incorrect. The district court in *Cheney did* find the documents authentic. Exclusion of the documents in that case was based on Rule 403 concerns alone.

Again, I specifically adopt the findings of [the district court in *Neal*]. I think, on the documents I reviewed, for the same reasons [the *Neal* court] excluded them, I exclude them on my own review. Many of the documents are without any—some of the problems are they are without letterhead. There is some indication, although I think the plaintiff has supplied some explanation for that and the Court could take notice of that, but even the distribution of the documents is not completely satisfactory to the court.

In addition, the manner in which these documents were held, and looking at the transcript of William Simpson, that gives the court considerable pause as to their authenticity.

Thus, the ruling in *Williams*, based upon the decision in *Neal*, was that the Sumner Simpson documents were not authentic and thus could not qualify for admission under either the ancient documents or business records exceptions to the hearsay rule.

### C.

■ Our review of the district court's exclusion of the Sumner Simpson documents requires that we focus on the issue of authentication. Federal Rule of Evidence 901(a) provides that "[t]he requirement of authentication ... as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." We have stated the standard to be applied in authenticating a document under Rule 901 as follows:

> [The] showing of authenticity is not on a par with more technical evidentiary rules, such as hearsay exceptions governing admissibility. Rather, there need be only a prima facie showing, to the court, of authenticity, not a full argument on admissibility. Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence. The only requirement is that there has been substantial evidence from which they could infer that the document was authentic.

*United States v. Goichman*, 547 F.2d 778, 784 (3d Cir.1976). Where the authenticity of the Sumner Simpson documents has been challenged, the documents have most often been analyzed under Federal Rule of Evidence 901(b)(8), the ancient document provision. Under the ancient document provision, a document is admissible if it "(A) is in such condition as to create no suspicion concerning its authenticity, (B) was in a place where it, if authentic, would likely be, and (C) has been in existence 20 years or more at the time it is offered." Once a document qualifies as an ancient document, it is automatically excepted from the hearsay rule under Fed.R.Evid. 803(16).[13]

■ While the ancient documents provision has not been a subject of frequent discussion in reported opinions, those cases

---

13. Several courts rejecting authenticity challenges to the Sumner Simpson documents have relied on Fed.R.Evid. 901(b)(8). *See Parsons v. Celotex Corporation*, C.A. No. CV 478–319, slip op. (S.D.Ga. Aug. 27, 1980) (documents authentic in view of unsuspicious history); *Lockwood v. A.C. & S., Inc.*, Wash.Super., 109 Wash 2d 235, 744 P.2d 605 (1987) (en banc) (Simpson deposition provided sufficient evidence to support finding of authenticity under 901(b)(8)); and *Nutt v. A.C. & S., Inc.*, C.A. No. 80C–FE–8 slip op. (Del.Super. May 1, 1986) (alleged addition to or subtraction from the documents was speculation not rising to the level of suspicion).

Still other courts, using the same evidence, have ruled the documents to be authentic without specific resort to Rule 901(b)(8). *See, e.g., Cathey v. Johns–Manville Sales Corp.*, 776 F.2d 1565, 1573 (6th Cir.1985) (upheld trial judge's finding that evidence was sufficient to support authenticity), *cert. denied*, 478 U.S. 1021, 106 S.Ct. 3335, 92 L.Ed.2d 740 (1986); *Hendrix v. Raybestos–Manhattan, Inc.*, 776 F.2d 1492 (11th Cir.1985); *Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129 (5th Cir.1985) (no objection to documents noted or discussed); *Jackson v. Johns–Manville Sales Corp.*, 750 F.2d 1314 (5th Cir.1985) (no challenge to authenticity; objections on grounds of relevance and prejudice rejected), *cert. denied*, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986); *Radich v. A.C. & S., Inc.*, CA No. 87C–628, slip op. (E.D.N.Y. Sept. 26, 1988) (documents found admissible as to notice); *Gold v. Johns–Manville Sales Corp.*, 553 F.Supp. 482 (D.N.J.1982) (at motions hearing court admitted documents subject to relevance challenge at trial); *Alexander v. Combustion Engineering*, CA 478–274 slip op. (S.D.Ga. March 18, 1980) (documents found to be authentic at pretrial conference).

which do address the provision establish that the point of a Rule 901(b)(8) inquiry is to determine whether the documents in question are, in fact, what they appear to be. "Although the rule requires that the document be free of suspicion, that suspicion does not go to the content of the document but rather to whether the document is what it purports to be...." *United States v. Kairys,* 782 F.2d 1374, 1379 (7th Cir.), *cert. denied,* 476 U.S. 1153, 106 S.Ct. 2258, 90 L.Ed.2d 703 (1986). Questions as to the documents' content and completeness bear upon the weight to be accorded the evidence and do not affect the threshold question of authenticity. *Id. See also Radich v. A.C. & S., Inc.,* CA No. 87–C–628, slip op. at 16 (E.D.N.Y. September 26, 1989) (completeness of the documents may be argued to the jury). The determination that a set of documents are, indeed, *prima facie* authentic in no way precludes counsel from challenging the content of the documents or from arguing that missing documents subject the contents to a different interpretation.

■ We think it clear that the district courts in *Neal* and *Williams* failed to undertake the inquiry anticipated by Rule 901(b)(8), i.e., were the Sumner Simpson documents offered what they purported to be? The court in *Neal* focused instead on the documents' completeness and upon the trustworthiness of the information set forth in the papers. The "suspicion" which concerned that court does not seem to have been a suspicion that the documents were not genuine but was, rather, a suspicion "from the viewpoint of reliability as to their trustworthiness, their completeness...." In *Neal,* the district court expressed some concern over the manner in which the documents had been held but did not make specific reference to any factors indicating that the documents were not genuine. The analysis of the district court in *Williams* was similarly flawed. That court specifically adopted the findings made by the court in *Neal* and noted that the " 'distribution of the documents' [was] not completely satisfactory." While the court in *Williams* also expressed some concern over the manner in which the documents had been held, that concern was

not well articulated. There is nothing in either the *Neal* or the *Williams* rulings which suggests a basis for believing that the Sumner Simpson documents had been altered or that they had somehow been manufactured in anticipation of litigation.

Having reviewed the Sumner Simpson documents originally contained on the plaintiffs' exhibit list and the relevant portions of the original William Simpson deposition, we are convinced that on the basis of these materials alone, the plaintiffs have met their burden of establishing the *prima facie* authenticity of the documents. The Simpson deposition indicates to us that the manner of retaining the Sumner Simpson documents was consistent with what might have been expected.

> In view of this clear and unsuspicious history of custody ... the papers are authentic under the standard of 901(b)(8). Defendants cannot put forward so much as a hint that these documents have been tampered with in any way. Nor in [our] perusal of the transcripts of the argument on similar motions in other asbestos litigation have [we] found any serious suggestion that the documents are fake or that they have been altered.

*Parsons v. Celotex Corporation,* C.A. No. CV 478–319, slip op. at 3 (S.D.Ga. Aug. 27, 1980). We conclude that the district court's exclusion of the Sumner Simpson documents on the grounds set forth in *Williams* was not consistent with the sound exercise of judicial discretion and that the ultimate determination of the authenticity of these documents was a question for the jury.

### IV.

■ Finally, we turn to the Fund's contention that any error in the district court's ruling with respect to the Sumner Simpson documents was harmless in view of the fact that "the documents clearly do not address the causation issues which were the basis of the jury's decision in favor of defendant."

■ The Fund correctly states that under Delaware law, the plaintiff in an asbes-

tos-related personal injury action must demonstrate that "but for" the tortious conduct of the defendant, there would not have been injury. *Nutt v. G.A.F. Corp.,* 526 A.2d 564, 566 (Del.Super.1987). Delaware law also requires that the " 'but for' nexus between asbestos exposure and the injury claimed be established through medical testimony." *Lee v. A.C. & S. Co., Inc.,* 542 A.2d 352, 354 (Del.Super.1987).

The Fund argues that, in returning a verdict in favor of the defendant, the jury necessarily concluded that the plaintiffs' medical testimony was not credible. While the plaintiffs' expert pathologist, Dr. Stone, expressed the opinion that Walter Threadgill's mesothelioma would not have developed "but for" his exposure to Johns–Manville's asbestos-containing products, he was impeached with deposition testimony in which he had failed to draw the "but for" conclusion. The Fund contends that "the jury did not find Dr. Stone's testimony to be credible.... The jury's reasonable rejection of Dr. Stone's trial testimony effectively defeated plaintiffs' efforts to prove that defendants' conduct was the proximate cause of any injury to the plaintiffs." The Fund argues that this failure to prove proximate cause would have defeated the plaintiffs' conspiracy claims whether or not the Sumner Simpson documents had been admitted into evidence.

This argument loses most of its force, however, in light of the district court's analysis of the bases upon which the jury might have arrived at the verdict in favor of the defendant. In its opinion denying the plaintiffs' motion for a new trial, the court noted that all of the issues central to the plaintiffs' recovery "were hotly contested at trial" and that the defense verdict may have resulted from the jury's conclusion that the plaintiffs had failed to meet their burden of proof on one or more of any number of issues.

The district court stated that, based on the evidence, the jury was "free to conclude that plaintiffs had failed to establish product nexus." Even assuming that the jury *did* find product nexus, it may have discredited the testimony of plaintiffs'

medical expert. The district court's opinion establishes, however, that the jury verdict did not necessarily rest on lack of proof of causation:

> [E]ven if the jury accepted plaintiff's product nexus evidence and medical testimony, the jury could have concluded that between 1942 and 1945, Manville did not know or have reason to know that shipyard workers exposed to asbestos risked adverse health effects. If Manville did not know that asbestos was dangerous to shipyard workers, then it had no duty to warn Mr. Threadgill.

*Threadgill v. Manville Asbestos Disease Compensation Fund,* C.A. No. 88–161–JRR, slip op. at 7 (D.Del. July 27, 1990). Finally, the district court concluded that the jury verdict may have been based upon a determination that even if Manville did owe Walter Threadgill a duty to warn, any warning given would have been ignored.

The district court's opinion denying the plaintiffs' motion for a new trial clearly forecloses the Fund's argument that the jury necessarily found that the plaintiffs had failed to carry their burden on the issue of causation. The district court concluded that, "many elements of plaintiffs' case were contested. The mere fact that plaintiff produced some evidence as to each element does not mean that the jury had to credit it. What each juror thought of each scintilla of evidence is a mystery and will remain so."

Thus, while the jury verdict *may* have rested on plaintiffs' failure to prove causation, there is no way to establish this for certain. If the verdict rested instead on a finding that Johns–Manville lacked knowledge of asbestos-related health hazards at the time of Threadgill's injury, the Sumner Simpson documents might well have been relevant to the claim based upon negligent failure to warn. Furthermore, given that the jury verdict did *not* clearly depend upon a finding of lack of causation, the Fund's argument that the conspiracy claim was doomed, even without the Sumner Simpson documents, is unpersuasive. Focusing on the jury verdict alone, then, it is impossible to conclude that exclusion of the

Sumner Simpson documents was no more than harmless error.

### V.

We have concluded that the district court's adoption of the conclusions reached by the district court in *Williams* is not consistent with a sound exercise of discretion and that the error was not harmless. Thus we will reverse the order of the district court and remand this matter for a new trial on the counts of negligence and conspiracy.