# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 16, 2010

No. 09-41055
Summary Calendar

Lyle W. Cayce
Clerk

JAVIER ESCALANTE,

Plaintiff - Appellant

v.

HILLARY CLINTON, Secretary of State,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas, Lufkin
USDC No. 9:08-CV-96

Before JOLLY, STEWART, and ELROD, Circuit Judges.

PER CURIAM:[*]

Javier Escalante appeals the district court's denial of his request for a declaratory judgment that he is a United States citizen. Escalante contends that the district court abused its discretion by admitting into evidence two exhibits. We conclude that even if the district court did abuse its discretion by admitting these exhibits – a matter we do not decide – Escalante's substantial rights were

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-41055

not affected and therefore any assumed error was harmless. We therefore affirm the judgment of the district court.

## I.

Escalante applied for a United States passport in December 2005. The Secretary of State denied his application. Pursuant to 8 U.S.C. § 1503(a), Escalante sought a declaratory judgment that he is a United States citizen because he was born in Texas.[1]

The district court conducted a bench trial. Although counsel for both parties stated on the record that they had agreed not to object to each other's exhibits, the district court admitted the exhibits into evidence conditionally, stating that it was reserving a ruling as to the admissibility of affidavits subject to post-trial briefing. Both parties sought to admit into evidence the two documents that are at issue on appeal: (1) INS Form G-329, "Documented False Claim to Citizenship" ("Form G-329"), dated September 28, 1984; and (2) INS Form I-215W, Record of Sworn Statement in Affidavit Form by Catalina Hernandez ("Hernandez Affidavit"), signed on August 4, 1971. Post-trial, the district court allowed Escalante to withdraw his offer of these two exhibits. Nevertheless, the district court ruled that both documents, which were also offered into evidence by the Secretary, were admissible.

---

[1] Section 1503(a) provides, in relevant part:

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 against the head of such department or independent agency for a judgment declaring him to be a national of the United States, except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding. . . .

2

No. 09-41055

At trial, Escalante's parents both testified that he was born in Eagle Pass, Texas, on August 16, 1966, at the home of Juanita Rodriguez, a midwife. Escalante's paternal great-grandmother, Isabel Alvarado, worked for Rodriguez. Escalante's parents explained that they lived in Piedras Negras, Mexico, right across the river from Eagle Pass, and that they had traveled to Eagle Pass on the afternoon of August 15, 1966, to go shopping, when Escalante's mother went into labor. They went to Rodriguez's house rather than returning home because they were not sure they had enough time to get back before the baby was born. While Escalante's father waited outside with the couple's eighteen-month-old son, Escalante was born at 3:00 a.m. on August 16, 1966.

Escalante's Texas birth certificate was admitted into evidence. That certificate was signed by Juanita Rodriguez and was registered in Texas on April 19, 1967. Escalante's parents testified that his great-grandmother was supposed to obtain the birth certificate and send it to them in Mexico, but she did not do so. Escalante's mother testified that her father, a United States citizen who lived in Piedras Negras, went to Texas and obtained the birth certificate when Escalante was about fifteen or sixteen years old. Escalante's parents testified that they obtained a Mexican birth certificate for him so that he could go to school in Mexico. The Mexican birth certificate, which was also admitted into evidence, was registered on February 26, 1968, and states that Escalante was born in Piedras Negras, Mexico on August 16, 1967. His parents also testified that they obtained a certificate of baptism for Escalante from the Catholic Church, which says that he was born on August 16, 1967, in Piedras Negras, Mexico. Escalante's mother testified that she made a mistake with respect to the date of birth on the Mexican birth certificate and certificate of baptism, and that he was actually born in 1966 rather than in 1967. Escalante also submitted into evidence the birth certificates of his five brothers and sisters. His mother testified that all of them were born in Mexico.

3

During his direct testimony, Escalante submitted into evidence Form G-329, dated September 28, 1984. Form G-329 states that Escalante was apprehended in Eagle Pass, Texas, seeking admission into the United States with a fraudulently-filed birth certificate. It states further that Escalante admitted to INS agents that he was born in Piedras Negras, Mexico, and that his "grandmother Isabel Escalante" had fraudulently registered his birth in Texas a couple of months after his birth in Mexico. Escalante testified at trial that he was detained by border agents on September 28, 1984, the first time he used his Texas birth certificate to come to the United States. He testified that he was interrogated for about seven hours and threatened with jail. He said that he told those agents that he had been born in Piedras Negras, Mexico, as reported on Form G-329, so that they would let him go. He denied that he told the agents that his "grandmother Isabel Escalante" had fraudulently registered his birth in Texas. He stated that he did not know how the agents got the name "Isabel Escalante."

The Secretary submitted into evidence a certified copy of the file on Escalante maintained by the Texas State Registrar of Vital Statistics. That file included a copy of Form G-329. The file also included the Hernandez Affidavit. The Hernandez Affidavit is on a Department of Justice witness form dated June 8, 1971. It was signed by Catalina Hernandez (the daughter of Juanita Rodriguez, the midwife who allegedly attended Escalante's birth) two months later, on August 4, 1971. The Affidavit states that Hernandez and Rodriguez were midwives in Eagle Pass, Texas, and were also in the business of supplying false birth certificates to parents of children who were not born in their presence. The Affidavit states further that Hernandez pleaded guilty to falsely registering births and was sentenced to nine months in prison, suspended on the condition that she cooperate with the INS in clearing up false birth registrations filed by her and Rodriguez. Finally, the affidavit states that Escalante's birth was

No. 09-41055

falsely registered by her mother and that Escalante was not born in her mother's home in Eagle Pass, Texas.

After the trial, the district court ordered supplemental briefing on the admissibility of certain evidence. Although Escalante had sought to enter both Form G-329 and the Hernandez Affidavit into evidence as plaintiff's exhibits, he moved, post-trial, to withdraw them and argued that they were inadmissible hearsay. The district court granted Escalante's motion to withdraw these exhibits. However, as we have noted, the same documents were introduced into evidence by the Secretary.

The district court held that the Hernandez Affidavit was admissible as an ancient document pursuant to Federal Rule of Evidence 803(16), but stated that it gave "little weight" to that document. The district court did not specifically address the basis for admitting Form G-329. The district court held that Escalante failed to show by a preponderance of the evidence that he is a United States citizen due to place of birth. *See De Vargas v. Brownell*, 251 F.2d 869, 870 (5th Cir. 1958) (plaintiff has burden of proving by a preponderance of the evidence that he is an American citizen). The court stated:

> Having considered all of the admissible documentary and testimonial evidence, the Court has determined that the saga of Mr. Javier Escalante's birth in Eagle Pass is most likely untrue. What does not rely on credibility determinations, what was not explained, is that he told the border guards in 1984, in detail, a version of events that essentially confirms what the government now says. The only plausible version of events is that proffered by the government: Mr. Javier Escalante was born in Piedras Negras, and his parents fraudulently obtained a Texas birth certificate for him, from Juanita Rodriguez, through Isabel Alvarado [Escalante].

## II.

On appeal, Escalante contends that the district court abused its discretion by admitting into evidence Form G-329 and the Hernandez Affidavit because they are inadmissible hearsay. He asserts that these erroneous evidentiary

No. 09-41055

rulings, individually and cumulatively, prejudiced his substantial rights, because the district court relied on them in its ultimate adverse factual determination.

We review the district court's evidentiary rulings for abuse of discretion. *United States v. Najera Jimenez*, 593 F.3d 391, 402 (5th Cir. 2010). "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Fed. R. Evid. 103(a). We consider Form G-329 first, and then turn to the Hernandez Affidavit.

A.

Form G-329 contains two statements: (1) that Escalante admitted that he was born in Piedras Negras, Mexico; and (2) that Escalante's "grandmother, Isabel Escalante,"[2] had registered Escalante's birth in Texas a few months after his birth. Escalante argues that because its author is not identified, it cannot be considered a government record. He also contends that his statements would have been translated from Spanish into English, but no information is provided regarding the translation, which presents the problem of hearsay within hearsay. Finally, he contends that the adversarial setting in which the document was created – he claims that he was interrogated for seven hours and threatened with jail – suggests that it should not be held to be sufficiently trustworthy as to warrant admissibility.

As we have said, Escalante introduced Form G-329 into evidence, and then withdrew it after trial. However, Form G-329 was also introduced by the Secretary. At trial, during his own case-in-chief, Escalante testified that when he was detained by border agents on September 28, 1984, he told them that he was born in Mexico. Although Escalante denied that he had said that his grandmother fraudulently registered his birth in Texas, he specifically

---

[2] As we have already noted, it was Escalante's great-grandmother, not his grandmother, who worked for Rodriguez. Furthermore, her name was Isabel Alvarado, not Isabel Escalante.

corroborated the statement on Form G-329 that he admitted to the agents that he was born in Piedras Negras, Mexico.

Although the district court did not state the basis for admitting Form G-329, the Government argued that it was admissible under Federal Rules of Evidence 801(d)(1)(A) (prior statement by witness that is inconsistent with witness's trial testimony is not hearsay); 803(6) (hearsay exception for records of regularly conducted activity); 803(8) (hearsay exception for public records and reports); and 807 (residual hearsay exception). Escalante argues that Form G-329 is not admissible under Rule 803(8), which excludes from application of the hearsay rule:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation, made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Escalante contends that because the author of the form is not identified, it is unknown whether that person observed the matters contained in the form firsthand pursuant to a duty imposed by law as provided in Rule 803(8)(B). He contends further that the law enforcement exception, in the same proviso, should apply to exclude Form G-329, because it is based on the observations of Customs Service officials who are law enforcement personnel. He argues that the business records exception, Rule 803(6), cannot justify admission of evidence that is inadmissible under Rule 803(8).

As we have already noted, Escalante testified at trial that he was detained by border agents on September 28, 1984, and that he admitted to those agents that he was born in Mexico, as reported in Form G-329. Although he claims that

he made that admission only because he was fearful and had been subjected to seven hours of interrogation, that claim does not undermine the fact that his trial testimony corroborates what Form G-329 reported.  Accordingly, even if we assume that the district court abused its discretion by admitting Form G-329, any error was harmless.  The ultimate factual issue in this case was whether Escalante was born in the United States or in Mexico.  In his direct testimony during his case-in-chief, he admitted that he told border agents in 1984 that he was born in Mexico.  Accordingly, the admission of Form G-329, even if erroneous, did not affect his substantial rights.  We now turn to consider the Hernandez Affidavit.

B.

The district court held that the Hernandez Affidavit was admissible under Federal Rule of Evidence 803(16), the "ancient document" exception to the hearsay rule.  Under Rule 803(16), "[s]tatements in a document in existence twenty years or more the authenticity of which is established" are not excluded by the hearsay rule.  "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  FED. R. EVID. 901(a).  Rule 901(b)(8) states that an ancient document may be authenticated by evidence that the document "(A) is in such condition as to create no suspicion concerning its authenticity, (B) was in a place where it, if authentic, would likely be, and (C) has been in existence 20 years or more at the time it is offered."  FED. R. EVID. 901(b)(8).

Escalante does not contend that the Hernandez Affidavit is in such a condition as to create suspicion concerning its authenticity – that is, suspicion concerning whether it is an Affidavit signed by Catalina Hernandez.  *See United States v. Mandycz*, 447 F.3d 951, 966 (6th Cir. 2006)  ("Although Rule 901(b)(8) requires that the document be free of suspicion, that suspicion goes not to the

content of the document, but rather to whether the document is what it purports to be.") (internal quotation marks and citations omitted); *Threadgill v. Armstrong World Industries, Inc.*, 928 F.2d 1366, 1376 (3d Cir. 1991) (the suspicion referred to in Rule 901(b)(8)(A) "does not go to the content of the document but rather to whether the document is what it purports to be"). Furthermore, Escalante does not dispute that the Hernandez Affidavit was in a place where it, if authentic, would likely be: in the certified, official "A-file" of Escalante maintained by the INS, as well as in the official file maintained by the Texas Bureau of Vital Statistics. Finally, it is undipsuted that the Hernandez Affidavit had been in existence for more than 20 years at the time it was offered into evidence. Escalante contends, however, that the Hernandez Affidavit cannot qualify for admission under the ancient document exception, because it constitutes "hearsay within hearsay." Escalante claims that because Hernandez did not speak English, the Affidavit was translated into Spanish and read to her. Because there is no evidence of the identity or qualifications of the person who translated it, Escalante argues that there is an additional level of hearsay caused by the translation. He asserts that if the government supplied the translator, that would impair the justification for treating the statements in the Affidavit as the statements of Hernandez, because the government was engaged in an ongoing investigation of the criminal activities of Hernandez and Rodriguez, and because Hernandez had a motive to be as cooperative as possible with the authorities who were holding the key to her imprisonment. Finally, he points out that the Affidavit was drafted two months before Hernandez signed it.

The district court expressly rejected Escalante's contention regarding hearsay within hearsay, stating that "[t]his is not a situation involving layers of hearsay." Accordingly, it must have implicitly concluded that the translator acted as "no more than a language conduit and therefore his translation does not

9

No. 09-41055

create an additional level of hearsay." *United States v. Martinez-Gaytan*, 213 F.3d 890, 892 (5th Cir. 2000). Escalante's remaining arguments do not affect the admissibility of the Hernandez Affidavit, but only the weight to be given to it by the trier of fact. *See Threadgill*, 928 F.2d at 1376 ("Questions as to the documents' content and completeness bear upon the weight to be accorded the evidence and do not affect the threshold question of authenticity."); *United States v. Kairys*, 782 F.2d 1374, 1379 (7th Cir. 1986) (in appeal of order revoking citizenship, court rejected defendant's contention that district court erred by admitting German SS identity card because it was a forgery, stating that under ancient document exception, "[w]hether the contents of the document correctly identify the defendant goes to its weight and is a matter for the trier of fact; it is not relevant to the threshold determination of its admissibility."). The district court's order reflects that it considered all of the points raised by Escalante and ultimately concluded that it would give the Hernandez Affidavit "very little weight."

Even if we assume that the district court abused its discretion by admitting the Hernandez Affidavit under the Rule 803(16), the hearsay exception for ancient documents, any error was harmless, not only because the district court accorded it "very little weight," but also in the light of Escalante's testimony that he admitted to border agents in 1984 that he was born in Mexico.

## III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

10