**MOUNTAIRE OF DELMARVA, INC.,**
**Employer-Petitioner Below,**
**Appellant and Cross-Appellee,**

v.

**Janie GLACKEN, Employee-Defendant**
**Below, Appellee and Cross-Appellant.**

Supreme Court of Delaware.
Submitted Sept. 13, 1984.
Decided Nov. 1, 1984.

Frederick W. Iobst, Barry M. Willoughby (argued), Young, Conaway, Stargatt & Taylor, Wilmington, for appellant and cross-appellee.

Clayton E. Bunting, Wilson, Halbrook & Bayard, Georgetown, for appellee and cross-appellant.

Before HORSEY, MOORE, and CHRISTIE, JJ.

MOORE, Justice:

Mountaire of Delmarva (Mountaire) appeals a decision of the Superior Court affirming a workmen's compensation award of the Industrial Accident Board (the Board) to the claimant, Janie Glacken. We address the unanswered question remaining in *Air Mod Corporation v. Newton*, Del.Supr., 215 A.2d 434 (1965): In seeking to deny benefits to an injured employee, because of a false representation as to past medical history, made in an employment application, what is the causal connection required between such false representation and later injury? The Board ruled that benefits could not be denied unless there was medical evidence establishing a causal relationship between the misrepresented prior history and the subsequent injury. We agree and affirm.

The claimant has cross-appealed the Board's ruling that her counsel fee award was limited to the lesser of 30% of the recovery or $2,250. The Superior Court

affirmed, and we also agree with that conclusion.

## I.

In September 1981, Mountaire advertised a part-time job for processing sales orders of chickens to the Company's employees. The work required lifting of up to seventy-five pounds. The claimant did not see the advertisement, but learned of the job from a friend who worked for Mountaire. The application process included an interview with the plant nurse, who took a health history from the claimant. The nurse used a pre-printed form and filled in the data as Mrs. Glacken verbally answered the questions contained therein.

The claimant was specifically asked if she had recurring back pain, and if she had ever had any back injuries. She answered no to both. The form also inquired of any prior hospitalization and surgery. Mrs. Glacken listed only childbirth, a partial hysterectomy in 1971 and kidney stones in 1968. There is no indication that she misunderstood the questions before signing the form with the answers she had given. In fact, she did not disclose that 16 years earlier she had lower back surgery for the removal of a herniated disc. It is clear that if Mrs. Glacken had answered yes to these particular questions, or had disclosed her prior hospitalization for back problems, she would not have gotten the job.

At the interview, she was told that the work would require packing chickens and that she might have to do some heavy lifting in order to move the boxes of chickens from one table to another. Apparently she understood, and was hired.

On October 30, 1981, during the course of her employment, Mrs. Glacken lifted a 40 pound box of chickens and felt something pull in the lower portion of her back. This was diagnosed as a herniated disc approximately 1½ inches above her earlier injury.[1]

Eventually, this second ruptured disc was surgically removed, coupled with a fusion of the affected vertabrae. The parties subsequently entered into an Agreement as to Compensation. Mountaire first learned of the claimant's prior back problems when her husband came in to pick up a compensation check. A few weeks later the employer received a communication from the hospital confirming that Mrs. Glacken had prior back surgery.

Mountaire then petitioned the Board to terminate Mrs. Glacken's total disability benefits on the ground of ineligibility because of false statements she made in her employment application. Mountaire claimed reliance on such misrepresentation, and further alleged that a causal connection existed between the two back injuries. The Board found that Mrs. Glacken had knowingly and willfully failed to disclose her prior back problems to Mountaire, and that she would not have been hired if the employer had known of them. However, the Board found that the employer had failed to show medical causation between the claimant's false representation and her subsequent injury. Accordingly, the petition to terminate these benefits was denied. Mrs. Glacken's reasonable attorney's fees were taxed as costs against the employer.

## II.

This case is controlled by *Air Mod Corporation v. Newton*, Del.Supr., 215 A.2d 434 (1965), which establishes a three part test applicable to a forfeiture of workmen's compensation benefits because of a fraudulent misrepresentation in an employment application.

Mountaire first contends that the Board incorrectly required proof of medical causation as an element of the *Air Mod* test. The employer urges this Court to read *Air Mod* as establishing two separate and distinct rules for the denial of compensation benefits when a pre-employment misrepresentation occurs. Mountaire relies on the

---

**1.** Specifically, the first injury involved the disc located between the vertabrae identified in medical terms as L5–S1, while the second injury affected the disc known medically as L4–5.

following statement in *Air Mod:* "It is generally agreed that an employee's false pre-employment statements as to his health may preclude him from receiving workmen's compensation benefits if the misrepresentations go to the factum of the employment contract, or if there is a causal relationship between the misrepresented physical condition and the injury." *Air Mod Corporation,* 215 A.2d at 439.

■ From this Mountaire argues that compensation benefits must be denied if the employer showed that the employee's misrepresentation was so egregious that it went to the "factum of the employment contract", or if the employer otherwise satisfied the three part test set out in *Air Mod.* We find no merit in the first contention.

There is but a single three part test in *Air Mod.* It is this:

Upon the basis of public policy, the authorities above discussed, and principles of fairness and justice, we hold that an employee forfeits his right to benefits under the Delaware Workmen's Compensation Act if, in applying for employment, the employee (1) knowingly and wilfully made a false representation as to his physical condition; and (2) the employer relied upon the false representation and such reliance was a substantial factor in the hiring; and (3) there was a causal connection between the false representation and the injury.

*Id.* at 440. The fallacy in Mountaire's argument arises from the suggestion that a separate test applies when a "misrepresentation goes to the factum of the employment contract". That, however, is proof only of the second element of the entire *Air Mod* analysis. Thus, it is insufficient to rest on a claim that the employee would not have been hired if his or her true

physical condition was known. While we have not previously addressed the point, it was rejected by the Superior Court in the only reported Delaware case to apply the *Air Mod* standard. *General Motors Corp. v. Cresto,* Del.Super., 265 A.2d 42 (1970). In *Cresto* the Superior Court held that under *Air Mod,* "*all three factors* had to be present before compensation benefits could be forfeited." *Id.* at 43 (emphasis in original). This is entirely correct, and the Board properly followed it.

### III.

On the issue of causation, Mountaire relied on the testimony of its personnel manager, the claimant, the plant nurse who interviewed her, the claimant's treating physician, and a doctor called by the employer, who only examined a portion of the claimant's medical records. From that evidence the Board correctly concluded that Mountaire had met the first two parts of the *Air Mod* test. It found that 1) the claimant knowingly and willfully made a false representation as to her physical condition when she denied having prior back problems or surgery and 2) that she would not have been hired had the employer known of her previous back injury. As to the element of medical causation, the Board concluded that such proof was lacking. Thus, the primary issue here focuses on the causal connection between the false representation and the injury.

Mountaire asserts that its proof was satisfied when it successfully demonstrated that, but for the misrepresentation, it would not have hired the claimant for this job, and therefore she would not have been injured. But as we have already noted, that proof goes only to the second element of the *Air Mod* test, and ignores the complete analysis which that case requires.[2]

---

**2.** The employer argues that a distinction between the second and third elements would still exist, as the second element would focus on the employer's subjective motivation in hiring the claimant, while the third criterion would go to Mountaire's objective motivation. According to this analysis, the employer can show that it would not have hired someone with a weak back, thereby satisfying the second part but fail to show the third element because the job for which the claimant was hired did not require any heavy lifting or back strain. We reject such a narrow interpretation of *Air Mod.*

In our view the *Air Mod* inquiry is not complete without pursuing the question whether a medically ascertainable nexus exists between the allegedly undisclosed or misrepresented physical condition and the subsequent injury. This conclusion is supported by the specific finding in *Air Mod* that "in the instant case, it is clear ... that there was a causal connection between the *misrepresented physical condition* and the plaintiff's *present physical condition. Air Mod,* 215 A.2d at 440–41 (emphasis added).

The *Air Mod* test has been adopted by several other jurisdictions. *See,* 1C Larson, Workmen's Compensation Law § 47.53 (1982); *Shippers Transport of Georgia v. Stepp,* Ark.Supr., 265 Ark. 365, 578 S.W.2d 232 (1979); *City of Miami v. Ford,* Fla. Supr., 252 So.2d 228 (1971); *Martinez v. Driver Mechenbier, Inc.,* N.M.Ct.App., 90 N.M. 282, 562 P.2d 843 (1977); *Federal Copper & Aluminum Co. v. Dickey,* Tenn. Supr., 493 S.W.2d 463 (1973). The element of causation has generally been held by those jurisdictions, which follow *Air Mod,* as requiring a causal connection between the undisclosed condition, and the subsequent industrial accident. *See, e.g., Hilt Truck Lines, Inc. v. Jones,* Neb.Supr., 204 Neb. 115, 281 N.W.2d 399 (1979); *Pickett v. Chattanooga Convalescent & Nursing Home,* Tenn.Supr., 627 S.W.2d 941 (1982); *Volunteers of America of Madison v. Industrial Commission,* Wis.Supr., 30 Wis.2d 607, 141 N.W.2d 890 (1966).

■ Here, the Board went further, and required that the causal relationship between the two injuries be supported by medical testimony. Other jurisdictions have adopted such a requirement. *See, Foust v. Ward School Bus Manufacturing Co.,* Ark.Ct.App., 271 Ark. 411, 609 S.W.2d 88 (1980); *Daniels v. Gudis Furniture Co.,* Tenn.Supr., 541 S.W.2d 941 (1976).

We consider it fair and reasonable that the employer be required to make such a showing. Thus, proof only that the claimant had an increased risk of a new injury will be insufficient to satisfy the *Air Mod*

analysis. *Contra, Chavez v. Lectrosonics, Inc.,* N.M.Ct.App., 93 N.M. 495, 601 P.2d 728 (1979); *Foster v. Esis, Inc.,* Tenn.Supr., 563 S.W.2d 180 (1978). Instead, the employer must show through medical testimony that there was a causal nexus between an allegedly misrepresented or undisclosed prior physical condition and the subsequent injury. Here, the employer made that attempt, but the Board noted the inadequacy of Mountaire's medical evidence. Referring to the testimony of the company's expert, the Board stated:

Even Dr. Hogan admitted that it was possible for this injury to be unrelated to the prior injury. He did, however, state that he strongly felt that the prior injury made the claimant susceptable to the second injury. Dr. Hogan did not have a complete medical file in front of him. The Board realizes that the doctor can testify without ever having examined the claimant. In fact, we feel that by examining this claimant he could have gathered no further information to add to his testimony. The Board was surprised to find that he did not consult the original surgeon's report from the 1967 surgery. He, therefore, was without the complete medical file upon which to base an expert opinion. Dr. Roe was the treating physician for the patient and had seen the inside of her back. We therefore find that his testimony be given more weight and we agree with it.

Thus, not only did Mountaire fail in its burden of proof, but the Board found substantial evidence that this industrial accident was not causally related to any prior weakness or pre-existing condition of the claimant.

IV.

■ As to Mrs. Glacken's cross-appeal on the issue of attorney's fees, we conclude that the Superior Court was correct in affirming the Board's finding that there was only one issue before it for which an award could be made. An attorney's fee was granted pursuant to 19 *Del.C.* § 2127(a),

which provides that fees in workmen's compensation cases are limited to 30% of the award up to a maximum of $2,250.[3]

The claimant argues that since the Board decided several issues in her favor, these should be treated as separate compensation awards for which she was entitled to separate allowances of attorney's fees. It is suggested that the Board abused its discretion by limiting Mrs. Glacken to only one grant of attorney's fees under 19 *Del.C.* § 2127(a), rather than individual fees for each issue decided in her favor. However, the Board concluded that the central issue before it was the claimant's right to continued total disability payments. Any other question was subsidiary to or arose from that dispute.

While there may be circumstances when an allowance of separate fees is appropriate because the Board has made multiple awards to the claimant, we are satisfied that this is not such a case, and the Board acted well within its discretion.

■ As the claimant correctly notes, the Board must consider factors similar to those set forth in the Lawyer's Code of Professional Responsibility when awarding attorney's fees in workmen's compensation matters. *General Motors Corp. v. Cox,* Del.Supr., 304 A.2d 55 (1973). Here, there is no evidence that the Board failed to take those criteria into account.

Accordingly, the judgment below is AFFIRMED.

---

3. 19 *Del.C.* § 2127(a) states:
   A reasonable attorney's fee in an amount not to exceed 30% of the award or $2,250, whichever is smaller, shall be allowed by the Board to any employee awarded compensation under this chapter and Chapter 23 of this title and taxed as costs against a party.