**Janet C. LEE, individually and as Administratrix of the Estate of Nelson L. Lee, deceased, Plaintiff,**

**v.**

**A.C. & S. CO., INC., et al., Defendants.**

Superior Court of Delaware, New Castle County.

Submitted: May 12, 1987.
Decided: May 12, 1987.

Robert Jacobs, and Douglas B. Canfield of Jacobs & Crumplar, P.A., Wilmington, for plaintiff.

James F. Hammill of McCarter & English, Cherry Hill, N.J., and Robert B. Anderson of McCarter & English, Wilmington, for defendants.

TAYLOR, Judge.

This trial involves the death of a person who was employed for many years as a pipe insulator, whose job involved installation of asbestos products for insulation of pipe against heat and cold. At the time of his death, he had cancer in the lung area as well as in other organs of his body. He had smoked cigarettes for many years.

I

Plaintiff seeks to have an epidemiologist, Dr. Joseph Wagoner, testify as to the probable cause of decedent's disease and death. This epidemiologist is not trained or experienced as a physician. His training and experience relate to the gathering and analyzing of statistical data relating to disease and death. In the gathering of data, he is skilled in examining and identifying physiological conditions appearing on tissue slides and X-rays. His function is to take data obtained from various sources and to develop statistics generated from the data. As an epidemiologist his objective is to determine the statistical prevalence of a particular disease or condition among persons exposed to a known phenomenon. His credentials in the field of epidemiology are impressive.

His proffered testimony does not reflect an examination of slides or X-rays pertaining to the deceased. Rather, his proffered testimony will set forth his opinion as to the probable cause of decedent's cancer and death based on the mass statistical probability for a person who has been exposed to asbestos.

Expert testimony is admitted if the specialized knowledge of the expert "will assist the trier of fact to understand the

evidence or to determine a fact in issue". Rule 702, *Delaware Uniform Rules of Evidence.* In this case, the pertinent issue is whether asbestos exposure was a proximate cause of the illness and death of decedent.

■ The initial consideration is whether an opinion of a non-physician may be accepted as to the cause of an internal disease or a non-violent death. The answer to this question is found in *Mountaire of Delmarva, Inc. v. Glacken,* Del.Supr., 487 A.2d 1137 (1984). *Mountaire* involved a claim for workmen's compensation involving a herniated disk in claimant's lower back. Employer resisted the claim on the ground that when the claimant had obtained this employment, she had failed to inform the employer that she had previously had surgery for a herniated disk. The prior surgery involved a disk located approximately 1½ inches below the present disk herniation. The significant issue was whether a causal connection existed between the concealed prior condition and the condition involved in the present claim. Commenting favorably on the ruling of the Industrial Accident Board that the causal relationship between the two conditions must be supported by medical testimony, the Supreme Court stated:

> We consider it fair and reasonable that the employer be required to make such a showing. Thus, proof only that the claimant had an increased risk of a new injury will be insufficient to satisfy the *Air Mod [Corporation v. Newton,* Del. Supr., 215 A.2d 434 (1965)]* analysis. *Contra, Chavez v. Lectrosonics, Inc.,* N.M.Ct.App., 93 N.M. 495, 601 P.2d 728 (1979); *Foster v. Esis, Inc.,* Tenn.Supr., 563 S.W.2d 180 (1978). Instead, the employer must show through medical testimony that there was a causal nexus between an allegedly misrepresented or undisclosed prior physical condition and the subsequent injury.

*Mountaire,* 487 A.2d at 1141.

Historically, the Supreme Court has held that medical testimony is required in most instances to prove that a person's condition is permanent, *Laskowski v. Wallis,* Del.

Supr., 205 A.2d 825 (1964), and that medical testimony is required to establish the probability that future treatment will be required, *Weiner v. Wisniewski,* Del.Supr., 213 A.2d 857 (1965). *Mountaire,* 487 A.2d at 1141, holds that the causal relationship of one physical condition to a subsequent physical condition must be established by testimony of a physician which addresses the causal connection. The Court went further and upheld the Board's rejection of a physician's causation testimony which did not reflect claimant's entire medical history. I conclude that the same reasoning which produced the *Mountaire* decision requires that any showing of causal nexus between asbestos exposure and decedent's disease and death must be made through medical testimony.

In this case, the epidemiologist's testimony is proffered as alternative independent evidence of causation. Epidemiology has been defined as:

> The science dealing with the occurrence and distribution of diseases, especially of epidemic and endemic diseases.

2 *Schmidt's Attorneys' Dictionary of Medicine,* E–103.

It is also defined as:

> The field of science dealing with the relationships of the various factors which determine the frequencies and distributions of an infectious process, a disease, or a physiological state in a human community.

*Dorland's Illustrated Medical Dictionary,* 499.

Hence, a person who testifies as an expert in epidemiology provides information concerning the frequency and distribution of the occurrence of a particular disease or malady. The focus of the expertise is upon the frequency in which a particular disease is likely to occur within a segment of the population who have lived under a particular condition. The epidemiologist's function does not extend to determination of the physical condition or symptoms of an individual.

■ Rule 702 of the *Delaware Uniform Rules of Evidence* permits testimony by a

person qualified as an expert by knowledge, skill, experience, training, or education "to assist the trier of fact to determine a fact in issue". The determination of the subject area which the expert can address must be made in the light of the education and experience of the expert. 3 *Weinstein's Evidence* § 702[04]. Here, the testimony of the epidemiologist is tendered to provide the jury with expert opinion concerning the cause of decedent's illness and death. Plaintiff's objective is that the jury will accept the epidemiologist's testimony, independently of the physician's testimony, as proof that asbestos caused decedent's disease and death even if the jury rejected the causation testimony of plaintiff's physician expert.

█ As a general proposition, it is recognized that opinions involving diagnosis, cause and effects of disease will be confined to those who are skilled in medical science. 21 *Am Jur 2d* Expert and Opinion Evidence § 95 at 616. Latent physical conditions and existence of a particular disease and the causation thereof must rest upon the findings and opinion of a trained physician. 31 *Am Jur 2d* Expert and Opinion Evidence § 97 at 619; 32 *C.J.S.* Evidence § 546(91) at 333–4. This standard has been applied in matters involving the pathology of disease. *Standard Life Ins. Co. of the South v. Strong,* 19 Tenn.App. 404, 89 S.W. 2d 367, 380 (1936); *North Kansas City Memorial Hospital v. Wiley,* Kan.Ct.App. Mo., 385 S.W.2d 218, 222 (1964); *Pacific Employees Ins. Co. v. Industrial Acc. Com'n.,* D.Ct.App.Calif., 118 P.2d 334, 339 (1941). It is this standard which the Delaware Supreme Court applied in *Mountaire,* 487 A.2d at 1141.[1] *See also, Peters v. Gelb,* Del.Super., 303 A.2d 685, 687 (1973), *aff'd,* Del.Supr. 314 A.2d 901 (1974).

█ The Court recognizes that in this case, plaintiff's medical expert, Dr. Susan Daum, has testified that one of the considerations which the medical profession relies in part upon in formulating an opinion of medical causation is statistical information developed by epidemiologists. In fact, in her opinion testimony, Dr. Daum referred to certain epidemiological data concerning the relationship between exposure to asbestos, smoking and lung diseases.

The distinction must be drawn between a medical opinion given by a physician in which the physician considers the patient's medical history, the patient's known symptoms, and X-rays and tests, as well as epidemiological statistics in reaching that opinion and an opinion by an epidemiologist whose area of expertise is limited to disease statistics. The training of the physician permits the physician to focus upon the cause of the individual's disease or death and to reach that opinion based upon all known factors. The epidemiologist, lacking physician's training and experience, must reach his opinion on statistical frequencies and distributions of the disease among groups. Thus, the epidemiologist's opinion lacks the individualized considerations which are essential to a medical determination of causation. I find that evidence of the cause of a disease such as cancer in a particular individual should be the product of those thought processes and considerations which a trained physician would engage in.

To permit the jury to hear and rely on the epidemiologist's opinion that the decedent's disease and death were caused by exposure to asbestos would provide the jury with a basis for deciding causation which is devoid of various factors which reflect the medical history and symptoms of the individual which would enter into a physician's determination of the cause of this person's disease and death. Thus, admitting the epidemiologist's opinion of causation as to the decedent would tend to cause the jury to draw a layman's conclusion about the cause of decedent's disease and death by treating statistical prevalence of a disease as though it was the same as evidence of the cause of this decedent's disease and death—a subject which must rest on medical opinion. Thus, the prof-

---

1. The Court notes that physician's testimony is also required in medical malpractice cases. However, the primary purpose in medical mal- practice cases is to establish the applicable standard of professional conduct, and, thus, the focus is different than the focus here.

fered opinion of the epidemiologist would tend to mislead the jury and might induce the jury to misapply the testimony in violation of Delaware law. Rule 403 of the *Delaware Uniform Rules of Evidence* contemplates that the Court will prevent such result by exercising discretionary power to exclude the evidence. Therefore, applying Rule 403, the testimony of the epidemiologist's opinion of the cause of decedent's disease and death will not be permitted.

## II

There remains the issue of whether the epidemiologist's testimony without addressing the cause of decedent's disease and death is admissible. Rule 703 of the *Delaware Uniform Rules of Evidence* recognizes that an expert may rely on facts and data of a type reasonably relied upon by experts in the particular field.

The Court discussed above the fact that Dr. Daum testified that the medical profession does rely in part upon group statistics developed by epidemiologists. Dr. Daum's testimony concerning the significance of epidemiological data as an ingredient of medical opinion opens the door under Rule 703 to permit the epidemiologist to testify as to his statistical data concerning smoking and exposure to asbestos. This is permitted not as evidence of causation of decedent's disease and death but as an aid to understanding and evaluating the medical opinion of Dr. Daum. The epidemiologist is impressively qualified to testify as to pertinent epidemiological statistics.

Accordingly, the epidemiologist will be permitted to testify concerning epidemiologically developed statistics relating to the frequency and distribution of diseases among groups who have been exposed to asbestos and/or cigarette smoking.

## III

In summary, the epidemiologist will not be permitted to state his opinion concerning the probable cause of decedent's disease or death. The epidemiologist will be permitted to state epidemiological statistics concerning groups exposed to asbestos and/or cigarette smoking.