## IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

MICHAEL CADIZ,                              )
                                            )
      Plaintiff,                            )
                                            )
v.                                          )    C.A. No. CPU4-15-002657
                                            )
RUFFINO PEREZ,                              )
                                            )
      Defendant                             )

Submitted:    January 13, 2017
Decided:     January 30, 2017

D. Miika Roggio, Esquire
Silverman McDonald & Friedman
1010 North Bancroft Parkway
Suite 22
Wilmington, DE 19805
*Attorney for Plaintiff*

Brian T. Jordan, Esquire
Jordan Law, LLC
704 North King Street
Suite 600
Wilmington, DE 19801
*Attorney for Defendant*

## DECISION AFTER TRIAL

This is an action for common law battery and personal injury. The events in question occurred at Dover Downs Hotel & Casino, in which the defendant, Ruffino Perez (hereinafter "Perez"), allegedly struck the plaintiff, Michael Cadiz (hereinafter "Cadiz"). On December 13, 2016, a trial was convened on the matter. At the conclusion of the trial, the Court requested briefing from the parties and reserved decision. This is the Court's final decision after trial and after consideration of the parties' briefings.

## LEGAL STANDARD

During the trial, the Court sat as the trier of fact. Therefore, it belongs solely to the Court to assess the credibility of the testifying witnesses and, where there is a conflict in the testimony, to reconcile these conflicts, "if reasonably possible[,] so as to make one harmonious story."[1] In doing so, the Court takes into consideration the demeanor of the witnesses, their apparent fairness in giving their testimony, their opportunities in hearing and knowing the facts about which they testified, and any bias or interest they may have concerning the nature of the case.[2]

## FACTS

At trial, the Court heard testimony from the plaintiff, Michael Cadiz; the defendant, Ruffino Perez; and from three other individuals: Harry Jones (hereinafter "Jones"), a security supervisor at Dover Downs; Stacey Cadiz (hereinafter "Stacey"), the ex-wife of Perez and the current wife of Cadiz; and Joseph Cadiz (hereinafter "Joseph"), the brother of Michael Cadiz. The Court also received documentary evidence, including surveillance videos from Dover Downs, photographs allegedly depicting Cadiz's injuries, and invoices from Bayhealth Medical and Delaware Eye Care.[3] The Court, as the sole trier of fact, assessed the credibility of each witness and finds the relevant facts to be as follows.

Perez and Stacey were married for approximately seven years, during which time they had a son. At some point after Perez and Stacey divorced, Stacey began dating Cadiz, and ultimately married Cadiz in 2014. During the general time surrounding the incident in question, Perez had custody of his son, and managed any transfers of the son to Stacey's supervision by

---

[1] *Nat'l Grange Mut. Ins. Co. v. Nelson F. Davis, Jr., et. al.*, 2000 WL 33275030, at *4 (Del. Com. Pl. Feb. 9, 2000).
[2] *State v. Westfall*, 2008 WL 2855030, at *3 (Del. Com. Pl. Apr. 22, 2008).
[3] The Court reserved decision on the ultimate admissibility and relative weight of each exhibit. These matters will be discussed *infra*.

2

conducting the transfer at a police station. Whenever Perez had physical custody of their son, Stacey would call Perez, who would hand the phone to their son, so Stacey could tell her son goodnight. At this point, Cadiz had not yet married Stacey, but the two were well along in their relationship. Cadiz and Perez had known each other for some time, and Perez – a correctional officer employed by the Delaware Department of Corrections – had previously supervised Cadiz while Cadiz was incarcerated. This context frames the incident at Dover Downs.

On May 31, 2014, Cadiz and his family – including Stacey, Joseph, and others – went to Dover Downs. At approximately 7 P.M., and before entering the casino, Stacey called Perez to tell her son goodnight, as per her custom. At no point did Stacey tell Perez or her son where she was or what she was doing, nor did she speak to Perez personally. After entering the casino, Cadiz and the others spent several hours amusing themselves before ultimately going to the gazebo bar.[4] Shortly after arriving, Perez entered the area, spotted Stacey, and approached.[5]

The gazebo bar, or at least the relevant section of the bar, is laid out in a particular fashion. It consists of a bar, an aisle, and a half wall, standing at approximately waist height. Customers must enter the area and walk up the aisle to reach a given seat at the bar. Around 11:17 P.M., when Perez spotted Stacey, he entered the gazebo bar area and walked up the aisle, with the bar to his right and the half wall to his left. Once Perez was near Stacey, he initiated an argument with Stacey and ultimately called her a derogatory name one or more times.[6] Perez then removed his hat, placed it on the half wall, and continued the argument.

---

[4] The witnesses alternately called the location the garden restaurant, the garden bar, and the gazebo bar. For the purposes of clarity, the Court will use the latter term.

[5] While Cadiz maintained Perez had specifically come to Dover Downs for the purpose of seeking out Stacey, the Court finds no credible evidence to suggest such premeditation. Instead, the mere fact of the encounter itself appears spontaneous, even if the actions subsequently taken by Perez were not so serendipitous.

[6] The argument centered around the assertion that Stacey owed Perez child support, or some other money, for the benefit of their son. Perez was upset because he believed Stacey was out drinking and gambling, yet could not pay to support their son. At one point, Perez told Stacey he would "see [her] tramp ass in court."

Cadiz, who was seated next to Stacey, began turning in his chair and was attempting to stand up. However, before Cadiz could leave his seat, Perez struck Cadiz twice in the face in quick succession. The members of Cadiz's party all came to their feet and began surrounding Cadiz and Perez. Perez began moving backward, but his progress was slowed because Cadiz had grabbed onto Perez's shirt and was half-stumbling, half being dragged along with Perez. Perez then made two or three more actions as though he intended to strike Cadiz again.[7] Cadiz finally let go of Perez's shirt and fell to the floor, while Cadiz's family members surrounded him and exchanged shouts and threatening gestures with Perez.[8] Perez retreated from the gazebo bar and made his way immediately out of the casino and into the parking lot.[9]

At the gazebo bar, members of Dover Down's security team, including Jones, approached Cadiz and ushered him into the security room. Once there, Jones called an ambulance for Cadiz; Cadiz ultimately refused to go with the ambulance and, after discussing the incident with Jones, left Dover Downs of his own accord. Cadiz then went to Bayhealth and was treated for a split lip, a blackened and bruised eye, and a bruised lump on his forehead. One week later, Cadiz also visited Delaware Eye Center, as he testified he had trouble seeing and was unable to drive.

While Cadiz and Stacey testified as to their fear and apprehension surrounding Perez following the incident, contact continued between the two parties. Shortly after the incident, Stacey called Perez to determine who was watching their son. The very next morning, after Cadiz left the hospital, Perez and Stacey met to exchange physical custody of their son. It was uncontroverted at trial that Cadiz was driving the vehicle that morning. In the intervening period

---

[7] The Court is unable to determine whether Perez actually succeeded in striking Cadiz additional times.

[8] The video of the incident shows Stacey pointing a finger directly in front of Perez's face, while Stacey and others appear to be yelling or shouting at Perez.

[9] It is of note to the Court that Perez appeared single-minded in his departure; he did not look over his shoulder, did not appear to focus on anything else occurring in the casino, and, while he was not running, he maintained a steady pace throughout his exit.

4

between the incident and the trial, Perez, Stacey, and Cadiz had varying levels of contact, none of which is germane to the matter at hand.[10]

## DISCUSSION

Because the Court withheld making final determinations of admissibility on several pieces of evidence, the Court will begin by addressing those matters, followed by a discussion on liability and damages.

### I. Admissibility of the Documentary Evidence

Before trial, the parties attempted to enter the following disputed documents into evidence: 1) a surveillance video from Dover Downs; 2) an incident report from Dover Downs; 3) medical records from Bayhealth; 4) medical records from Delaware Eye Care; 5) an invoice from Bayhealth; 6) an invoice from Delaware Eye Care; 9) criminal dockets relating to Cadiz. The Court will address these items *seriatim*.

### a. The Surveillance Video

It is well established that videotapes, photographs, and other such evidence must be authenticated before admission into evidence.[11] Delaware Rule of Evidence 901 provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its

---

[10] While the Court did hear testimony concerning an incident that occurred the week before trial, which involved a meeting outside of a play, the Court does not find the testimony on the incident to be either credible or relevant.
[11] *See generally Green v. St. Francis Hospital, Inc.*, 791 A.2d 731, 738 (Del. 2002) (photographs and videotapes were admitted after proper authentication); *Parker v. State*, 85 A.3d 682, 685 (Del. 2014) (social media evidence admissible with proper authentication).

proponent claims." Authentication can come from the testimony of a witness with knowledge.[12] This Court routinely admits video surveillance.

Jones was the officer called to testify on the video. Jones testified that, while he was not involved in the creation of the video itself, he was familiar with the procedures surrounding the video's creation. Jones was also able to identify specific locations within Dover Downs from the video, had reviewed the video shortly after its creation, and implicitly verified at least part of the video's accuracy by noting his own presence within the video. Jones further testified as to the date and time of the incident. The Court is satisfied this testimony satisfies the requirements of authentication; therefore, the Court will admit the video and give its contents appropriate weight in reaching its ultimate conclusions.

### b. The Incident Report

Under Delaware Rule of Evidence 803(6), certain documents are admissible under the business records exception to the hearsay rule. Such documents must be made and kept in the course of a regularly conducted business activity; furthermore, any hearsay within such documents must be independently admissible under an exception to the hearsay rule.

Jones testified that it was part of his job duties to prepare reports on incidents occurring at Dover Downs. However, Dover Downs is a casino; it is not in the business of security, nor does it function as any sort of investigative service. Rule 803(6) requires the record to be made in the course of a regularly conducted business activity – not a record made as a random, situational corollary beyond the scope of the regular activities of the business.[13] Jones had the aid of his report in refreshing his recollection, but there is no need, and no appropriate ground, for

---

[12] *Green, supra*, at 738.

[13] Numerous courts have found employee-generated incident reports to be inadmissible under Federal Rule 803(6) because such reports are made with the knowledge that the incident may result in litigation. *See Scheerer v. Hardee's Food Systems, Inc.*, 92 F.3d 702, 706-07 (8th Cir. 1996).

admitting the report into evidence. Accordingly, the Court will exclude the contents of the report from its considerations.

### c. Bayhealth Medical and Delaware Eye Care Records

As with the incident report, medical records are considered business records, thus requiring a proper foundation prior to admissibility. Cadiz sought to move the medical records into evidence without any testimony from a custodian, a qualified person, or a medical expert. A party must comply with Rule 803(6) to overcome the fact that medical records are, in fact, hearsay. Cadiz cannot testify himself as to the foundational requirements for admissibility, nor can he testify that he utilized the records in any capacity as an expert. The Court does not even reach the question of whether an expert would be required to interpret the records, because the records are not admissible as evidence without a testifying witness.[14]

### d. Bayhealth Medical and Delaware Eye Care Invoices

Invoices also require compliance with the business records exception.[15] Cadiz did not provide any testimony from the creator or custodian of the invoices, nor was he qualified to testify as to whether the invoices were generated and kept in the regular course of business.[16] Therefore, the Court will not allow the invoices into evidence.

### e. Cadiz's Criminal Docket

Delaware Rule of Evidence 609 allows a party to impeach the credibility of a witness through the introducing evidence of a prior conviction of the witness. The conviction may be for

---

[14] "[T]he custodian of the [medical] records must testify, unless the parties stipulate otherwise." *DiVirgilio v. Eskin*, 2005 WL 2249530, at *2 (Del. Super. Jun. 29, 2005) (citations omitted).

[15] *See e.g. Scully v. Cashman Equipment Co.*, 2016 WL 4149961, at *3 (C.D. Ca. Aug. 2, 2016).

[16] *See Glassman-Brown v. Pouring Wine, LLC*, 2015 WL 5853802, at *3-4 (S.D.N.Y. Aug. 5, 2015). "The plaintiffs failed to authenticate the medical records [and invoices] from different sources that they have submitted in support of their request for damages. In particular, the plaintiffs failed to provide the affidavit of a doctor(s) having knowledge of the origin of the records or of the manner in which they were kept or maintained." *Id.* at *4.

any felony and/or for any crime of dishonesty, including misdemeanors; crimes of dishonesty do not require balancing the probative value against the prejudicial effect. However, if more than ten years have elapsed since the date of conviction or the date of release from confinement imposed for that conviction – whichever is later – then the Court must undertake an additional step. The Court must determine whether "the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."[17]

It is uncontested the two convictions in question were for crimes of dishonesty. It is likewise uncontested that at least ten years have passed since Cadiz was convicted. Therefore, the Court must look to the "specific facts and circumstances" of the convictions, and must then weigh the probative value against the prejudicial effect. In *Fisher v. Beckles*, the Superior Court refused to allow evidence of prior convictions because the record lacked any specific details pertaining to those convictions.[18] This failure utterly precluded the defendant from utilizing the prior convictions.

In the case at bar, Perez likewise failed to offer any specific facts and circumstances relating to the convictions. Even when the Court granted Perez leave to cross examine Cadiz on these matters, pending a final determination by the Court, Perez failed to elicit any testimony on the circumstances beyond the date and the general nature of the crime. *Fisher* is binding upon this Court. The Court cannot allow evidence of a conviction older than ten years without having sufficient facts upon which to make a determination of prejudice and probative value. Therefore, the Court will not consider these convictions in reaching its conclusions.

---

[17] DRE 609(b).
[18] *See Fisher v. Beckles*, 2014 WL 703755, at *4 (Del. Super. Feb. 10, 2014).

## II.    Liability for Battery

"The tort of battery is 'the intentional, unpermitted contact upon the person of another which is harmful or offensive.' 'The intent necessary for battery is the intent to make contact with the person, not the intent to cause harm.' "[19] Delaware also recognizes the defense of self-defense, which is determined by the subjective belief of the actor that the force is necessary to protect him or herself from the unlawful use of force of another.[20] "[A] person employing protective force may estimate the necessity thereof under the circumstances as the person believes them to be when the force is used, without retreating, surrendering possession, doing any other act which the person has no legal duty to do or abstaining from any lawful action."[21]

The Court must determine 1) whether Perez intended to make contact with Cadiz; 2) whether Perez did make contact with Cadiz; 3) whether the contact was harmful or offensive; and 4) whether Perez was acting in self-defense. Perez has admitted he intended to strike, and did so strike, Cadiz. It is also uncontroverted that the contact was harmful. Therefore, the sole remaining issue before the Court with respect to liability is whether Perez has established a valid claim for self-defense.

During the trial, Perez testified to his training and experience as a corrections officer, while also testifying to his familiarity with Cadiz.[22] According to his testimony, Perez's only intention on the night of the incident was to talk to Stacey about money. However, while doing so, Cadiz began speaking to Perez. Perez then reportedly recognized he was surrounded by potentially hostile individuals, had no room to retreat, and allegedly felt threatened. Perez then

---

[19] *Hunt ex rel. DeSobre v. State*, 69 A.3d 360, 368-69 (Del. 2013) (internal citations omitted).

[20] *See Moor v. Licciardello*, 463 A.2d 268 (Del. 1983). Furthermore, "The substance of a claim of self-defense is the same in both criminal and civil litigation; only the burden of proof differs. . . . [T]he subjective test as defined in 11 *Del. C.* § 464 must now be applied to any claim of self-defense." *Id.* at 272.

[21] 11 *Del. C.* § 464.

[22] Perez stated he knew "what [Cadiz] was capable of."

9

took his hat off, adopted a "stance," and struck Cadiz.[23] Cadiz then grabbed Perez by the shirt, while Perez attempted to retreat; after Cadiz let go, Perez then proceeded to exit Dover Downs.

It is the right and the obligation of the Court to assess the credibility of a witness. In so doing, the Court does not find Perez's account to be credible. Perez instigated the incident by approaching Stacey; it is not beyond the scope of reason to suppose Cadiz might become upset and attempt to intervene when someone begins accusing Cadiz's significant other of various wrongs. Cadiz had not yet left his chair when Perez struck. Furthermore, Perez did not strike once, but twice, after having the time and forethought to set his hat down on the half wall.

According to Perez's own testimony, Perez received combat training and is trained in recognizing, assessing, and "neutralizing" threats – however, this is likely within the context of a correctional facility. Despite this training, Perez walked up a narrow aisle with limited room to retreat and confronted a former spouse about a contentious topic. Furthermore, Perez failed to notice Stacey was part of a large group and did not even notice the presence of Cadiz – someone reportedly known to Perez as a seemingly dangerous individual. After walking into this scenario, Perez felt threatened, yet his primary adversary was still seated at the bar. At no point did Perez raise his hands, back away, call for security,[24] or even vault over the half wall. Instead, Perez chose to attack a seated bystander.

The analysis of a self-defense claim does not follow the standard of what an ordinary reasonable person would do, but rather, it requires a subjective belief of the need for immediate action. The Court does not find Perez believed his actions were necessary to prevent himself from being subjected to unlawful force. Therefore, the Court finds Perez liable for battery.

---

[23] Perez stated he only struck Cadiz once.
[24] Because this incident happened at a bar in a crowded casino, there were numerous individuals working for Dover Downs in the immediate vicinity.

10

### III. Extent of Injuries

Having found Perez liable for the battery, the Court must now assess the extent of the injuries. The only evidence presented on this matter included testimony and photographs. Therefore, the threshold question is whether this Court can find injuries without the aid of a medical expert.

The Delaware Supreme Court has provided guidance on when expert opinion is necessary to establish the cause of injuries. "It is permissible for a plaintiff to make a *prima facie* case that a defendant's conduct was a proximate cause of the plaintiff's injuries, based upon an inference from the plaintiff's competent evidence, if such a finding relates to a matter which is within a lay person's scope of knowledge."[25] When the matter is beyond the ken of the average layperson, expert testimony is necessary.[26] Medical expert testimony has been required in automobile accident cases.[27]

The Court finds medical expert is not required to prove whether the injuries suffered by Cadiz were the result of Perez's actions. It is well within the scope of a layperson to understand the connection between a black eye and a blow to the face. However, the Court expressly limits this ruling to the existence of surface damage – contusions, bruising, bleeding, and the like. Absent medical expert testimony, the Court cannot find any manner of permanent injury, tissue damage, vision problems, or anything beyond what the naked eye can reveal to an untrained layperson.

The clearest evidence of Cadiz's injuries comes from the photographs admitted into evidence. However, the Court notes the photographs are not the most reliable pieces of

---

[25] *Money v. Manville Corp. Asbestos Disease Compensation Trust Fund*, 596 A.2d 1372, 1375 (Del. 1991).
[26] *See id.*
[27] *See Sluss v. David*, 2006 WL 2846387, at *2 (Del. Super. Oct. 4, 2006).

11

evidence.[28] The photographs are all taken by Cadiz, seemingly on his cellphone, and tend to be blurry, low-quality images. The Court also notes two of the photographs were taken of Cadiz while Cadiz was seemingly in the driver's seat of a vehicle.

The Court finds Cadiz to have suffered from a split lip, a blackened eye, and a bruised forehead. The Court does not find any impairment in Cadiz's ability to drive. This determination stems in part from the uncontroverted testimony that Cadiz was driving the morning after the incident, as well as the photographs of Cadiz in the driver's seat of a vehicle. Because the Court cannot assess the seriousness of the injuries, the Court must assume the injuries were all superficial and limited to the damage visible in the pictures.

## IV.   Damages

The final matter before the Court is the extent of damages. Cadiz seeks special damages for his medical expenses,[29] general damages for pain and suffering, and punitive damages. The Court will address each claim for damages in turn.

### a.  Special Damages

As a general matter, special damages can include amounts paid or owed for medical expenses arising from the tortious conduct alleged by a plaintiff.[30] "Where an injured plaintiff seeks to recover for medical services, the plaintiff must prove two distinct issues—first that the value claimed for medical services is reasonable, and second that the need for medical services was proximately caused by the tortfeasor's negligence."[31] Evidence of the amount of medical

---

[28] While the photographs establish the existence of injuries, the Court cannot determine the severity without expert testimony. By way of illustration, the photographs reveal Cadiz with a blackened eye, and the eye is only partially open. Cadiz testified his eye was swollen shut for a time. However, the Court is unable to determine whether the eye is, in fact, swollen shut, or if Cadiz is intentionally closing it.

[29] Cadiz has limited this to $4,751.57, which is the amount paid by Medicaid on Cadiz's behalf.

[30] *See Stayton v. Delaware Health Corp.*, 117 A.3d 521, 523 (Del. 2015).

[31] *Id.* at 525.

12

bills paid by Medicaid is dispositive on the reasonableness prong.[32] As discussed in Section III, *supra*, the Court is satisfied expert testimony is not required in the case *sub judice* to establish the proximate cause of Perez's actions and Cadiz's injuries. Therefore, the matter of special damages turns on whether or not Cadiz has proven the amounts paid by Medicaid.

The Court finds Cadiz did not meet his burden in proving the amount of medical expenses paid by Medicaid. As noted, the Court has excluded medical records and the invoices. The Court cannot utilize any of the documentary evidence to determine what amounts, if any, were paid by Medicaid. Because Cadiz did not present any additional testimony on the reasonableness of any medical expenses, the Court finds Cadiz failed to meet the first prong under *Stayton*.[33] The Court also notes that, even if Cadiz could prove the medical expenses were reasonable, and even if the Court were to accept the invoices into evidence, he has failed to prove the amount of damages. During his testimony, Cadiz evidently had no independent recollection of the amounts billed and even misread his own documents while testifying.[34] There is no credible evidence establishing the amount of the medical expenses, whether paid by Medicaid or not. Therefore, the Court finds Cadiz is not entitled to recover any special damages.

### b. General Damages

While general damages ordinarily follow from a party's special damages, they "may be awarded without regard to out of pocket losses and are those such that the law presumes to be the

---

[32] *Id.* at 533-34.

[33] Furthermore, the Superior Court has cautioned that corroboration of amounts provided through personal documentation or testimony of a plaintiff should be the norm: "The Court could have just as easily found that the failure to provide any bill or record corroborating [the] spreadsheets precluded recovery entirely; it is only due to the testimony of Plaintiffs' experts . . . that Plaintiffs may still recover some of these expenses." Generally speaking, "more substantiation will typically be needed." *Jagger v. Schiavello*, 93 A.3d 656, fn. 20 (Del. Super. 2014).

[34] Cadiz had difficulty distinguishing between payments and adjustments and offered inconsistent interpretations of the total amount paid by Medicaid.

natural and probable consequences of the defendants' wrongful conduct."[35] "In general, the plaintiff in a civil action for assault or battery is entitled to such an award of damages as will fully compensate him [or her] for the injuries directly flowing from the alleged tort, and for all detriment proximately caused by the defendant's wrongful act."[36] While there is no precise formula for ascertaining damages in a battery case, "[t]he traditional rule for battery cases is that general damages or presumed damages of a substantial amount can be recovered merely upon showing that the tort was committed at all."[37]

Neither party has provided the Court with guidance on how to calculate general damages without first establishing special damages. The Court has concluded Cadiz suffered from physical injuries; therefore, nominal damages are inappropriate. However, the Court is left to its own judgment, as would a jury, in what value to ascribe to those injuries. The Court finds that Cadiz experienced pain and discomfort following the incident, was required to wear a medical collar for a time, and was left with a permanent scar on his lip.

On the matter of emotional harm, the Court does not find any lasting mental distress suffered by Cadiz. The testimony presented relating to the fear and apprehension suffered by Cadiz and Stacey after the incident was not credible enough to meet the burden of proof. However, the Court recognizes there is a degree of mental distress inherent within any unprovoked attack in a public place,[38] particularly when the attack causes injury and requires medical attention.

Therefore, the Court will limit its calculation to the physical injuries suffered by Cadiz: the bruised and blackened eye, the split lip, and the lump on the forehead, the scar, the pain and

---

[35] *Jagger, supra*, at 667 (citations omitted).
[36] 35 A.L.R. 4th 947.
[37] 6A C.J.S. Assault § 67.
[38] Delaware recognizes a finding of damages in a personal injury case may include consideration of "such things as discomfort, anxiety, grief, or other mental or emotional distress[.]" Del. P.J.I. Civ. § 22.1 (2000)

14

physical discomfort, and the general mental distress of the battery itself. In its capacity as the sole trier of fact, the Court finds Cadiz is entitled to general damages in the amount of $5,000.00. This amount reflects the harm to Cadiz's bodily integrity, his injuries, and his emotional distress.[39] It is "the natural and probable consequence[] of the defendant['s] wrongful conduct."[40]

### c. Punitive Damages

"The purpose of punitive damages is two-fold: (1) to punish wrongdoers and (2) to deter others from engaging in similar conduct in the future. Punitive damages are recoverable . . . where the defendant's conduct 'exhibits a wanton or willful disregard for the rights of the plaintiff.' A defendant's conduct is willful or wanton when it reflects a "conscious indifference" or an "I don't care attitude.""[41] Punitive damages are appropriate when the defendant's conduct is particularly outrageous and requires punishment or deterrence.[42] The United States Supreme Court has encouraged courts to consider whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.[43]

However, "The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award[.]"[44]

---

[39] The emotional distress contemplated by this award of damages is limited to the distress of being subjected to a battery. It does not extend to distress or fear beyond the night of the incident.
[40] *Jagger, supra*, at 667 (citations omitted).
[41] *Black v. Chromascape, Inc.*, 2016 WL 6087103, at *1 (Del. Super. Aug. 9, 2016) (internal citations omitted).
[42] *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).
[43] *Id.*
[44] *Id.*

The Court does not find Perez to have acted with any degree of premeditation or malice. Instead, the Court finds Perez to have approached Stacey, perhaps unwisely, after a chance meeting at Dover Downs. From there, Perez's anger caused him to lose control and to lash out at Cadiz. While reprehensible and indicative of poor judgment and self-control, losing one's temper is not sufficiently outrageous or egregious as to support an award of punitive damages without some additional "malice, trickery, or deceit[.]"[45] The Court cannot conclude that an altercation, spurred by the heat of an otherwise peaceable argument, evinces a conscious indifference to the wellbeing of Cadiz. Furthermore, Cadiz was not a particularly vulnerable victim, and the Court did not hear any evidence of any prior altercations between Perez and Cadiz. This appears to be an isolated incident in which Perez lost control and struck out at a nearby available target. Therefore, punitive damages are not appropriate.

## CONCLUSION

For the foregoing reasons, the Court finds in favor of the Plaintiff, Michael Cadiz, and against the Defendant, Ruffino Perez. **IT IS HEREBY ORDERED** this 30th day of January, 2017, that Cadiz is awarded judgment in the amount of $5,000.00. Each party is to bear its own costs.

The Honorable Robert H. Surles
Judge

---

[45] *Id.*

16